O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JUAN AUGUSTO REYES ESCOBAR, | ) | CASE NO.: CV 06-5301 ABC (FFMx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER RE: CROSS-MOTIONS FOR** |
| v. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| MICHAEL B. MUKASEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are cross-motions for summary judgment. Plaintiff Juan Augusto Reyes Escobar ("Plaintiff") filed his motion on May 15, 2007. Defendants Michael B. Mukasey, Michael Chertoff, United States Citizenship and Immigration Service ("USCIS"), Jonathan Scharfen, and George S. Mihalko ("Defendants") opposed and filed a cross-motion for summary judgment on May 2, 2008. Plaintiff replied to his own motion and opposed Defendants' motion on May 16, 2008. Defendants replied on June 2, 2008. In its June 6, 2008 Order, the Court ruled on several of the matters presented in these motions and remanded this case to the Los Angeles Asylum Office for further proceedings on Plaintiff's eligibility for asylum. The asylum office denied his asylum application on July 31, 2008. The Court held oral argument on these matters on August 11, 2008. The parties have now

asked the Court to rule based on their prior briefing whether the asylum office abused its discretion in rendering its recent decision. The Court finds that no issues of material fact exist and the Court may review the asylum office's decision as a matter of law.  For the reasons herein, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion and concludes that the asylum office properly denied Plaintiff's application.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Court set out the factual background in its June 6, 2008 Order.  Plaintiff is a member of the class of aliens created by the settlement agreement in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991) (the "ABC case" or "ABC agreement"). The ABC case was a class action that challenged the adjudication of asylum claims submitted by nationals of El Salvador and Guatemala to the former Immigration and Naturalization Service (now subsumed in the Department of Homeland Security ("DHS") and the USCIS), and the Executive Office for Immigration Review ("EOIR").  American Babtist Churches v. Meese, 712 F. Supp. 756 (N.D. Cal. 1989).

As set out in the ABC opinion, the ABC agreement defines the class as including all Salvadorans who were in the United States as of September 19, 1990 and all Guatemalans who were in the United States as of October 1, 1990.  The ABC agreement principally affords class members who timely registered under the agreement the right to a de novo unappealable asylum adjudication before an asylum officer, subject to two exceptions.  Class members also are subject to special provisions that govern requests for work authorization.

Plaintiff was born in Guatemala in 1962 and entered the United States without inspection in October 1989.  On October 8, 1991, he

completed an I-589 asylum application and a class registration form pursuant to the ABC agreement. The INS received the application on October 21, 1991 and Plaintiff subsequently received employment authorization documents based on his pending application.

On December 17, 1993, Plaintiff submitted a form I-131 application for advance parole because he needed to travel back to Guatemala to visit his ill mother. On that same day, the INS requested more information, and on December 27, 1993, the INS denied the application. Despite this denial, Plaintiff left the country on December 27, 1993 and returned on January 20, 1994. He was apprehended by immigration officials and sent to Deferred Inspection. He appeared there on February 4, 1994, at which point the INS issued him an I-122 notice to applicant for admission detained for hearing before an Immigration Judge and placed him in exclusion proceedings. The INS charged him with violation of section 212(a)(5)(A)(i) (lack of a labor certification) and section 212(a)(7)(A)(i)(I) (lack of valid reentry permit) of the Immigration and Naturalization Act. Plaintiff was paroled into the United States pending his exclusion hearing.

Plaintiff appeared for an initial hearing on February 10, 1994, at which time the matter was reset for hearing on March 29, 1994 so Plaintiff could obtain an attorney. On that second date, Plaintiff again appeared pro se to reschedule the hearing and waive counsel and he denied the violation of section 212(a)(5)(A)(i) but admitted the violation of section 212(a)(7)(A)(i)(I). The Immigration Judge then reset the matter again to allow Plaintiff to file an I-589 asylum application. Plaintiff appeared pro se at the next hearing to request more time to file his application. On April 11, 1994, Plaintiff again appeared pro se and filed his I-589 asylum application in court.

Plaintiff failed to appear at the next hearing on February 6, 1995. The Immigration Judge noted that he had been notified of the date and he had given no reason for his absence. The Judge then conducted the hearing in absentia and ordered Plaintiff excluded based on the charges contained in the I-122 and denied his application for asylum relief for failure to prosecute. He did not appeal that decision, but on February 21, 2007, Plaintiff filed a motion to reopen these proceedings with the Bureau of Immigration Appeals ("BIA"), which was denied on March 26, 2007. Plaintiff has since appealed this decision to the United States Court of Appeals for the Ninth Circuit. Plaintiff has not left the United States since 1994.

On November 17, 2005, Plaintiff filed an I-881 application for Legal Permanent Residence under Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-110, 111 Stat. 2160 (November 1997). On January 26, 2006, the USCIS conducted an interview with Plaintiff on this application. The USCIS determined that Plaintiff was an ABC agreement class member, but nevertheless denied his application pursuant to paragraph 2 of the ABC agreement because Plaintiff had been apprehended at the time of his entry into the United States on January 20, 1994, which rendered him ineligible for benefits under the ABC agreement. The USCIS also noted that Plaintiff had been placed in exclusion proceedings and had been excluded on February 6, 1995. The USCIS's denial precipitated Plaintiff's instant complaint.

**II.   LEGAL STANDARD**

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R.

4

Civ. P. 56(c); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. See Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). This means that, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [that party's] favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In other words, the moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings . . . [T]he adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which

that party would bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. Id. at 248. However, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." Id. at 252.

**III. ANALYSIS**

Plaintiff has asserted only one claim: the Los Angeles Asylum Office erred in interpreting the ABC agreement to deny his I-881 application. In the Court's previous Order, the Court found in Defendants' favor on almost all points raised by the parties. However, Plaintiff argued that his departure was "innocent, casual, and brief," which he claims would not render him ineligible under paragraph 2 of the ABC agreement. See, e.g., Rosenberg v. Fleuti, 374 U.S. 449, 462 (1963). The Court remanded this matter to the asylum office because the asylum office at that point had not had the opportunity to analyze and decide this point. The asylum office's July 31, 2008 decision rejected this argument, so the Court may now review that determination.

**A.   Standard of Review**

Defendants suggest that the Court must review the asylum office's decision de novo because it was interpreting the ABC agreement, not immigration law, which was not necessarily within

the asylum office's expertise.  Cf. Singh v. Ashcroft, 386 F.3d 1228, 1230-31 (9th Cir. 2004) (noting that the Court does not "owe 'substantial deference' to the Attorney General's interpretations of general state and federal criminal statutes.").  On the other hand, the ABC agreement is an agreement based on immigration law, which is well within the expertise of the asylum office, so the asylum office's decision may be entitled to deference from the Court.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  The Court need not decide this question. Even if the Court reviews Plaintiff's application de novo, he is not entitled to relief.

**B.   Merits of Plaintiff's Application**

The only issue left for the Court to adjudicate is whether the Court could read into the ABC agreement an exception for a departure from the United States that was "innocent, casual, and brief." Plaintiff relies exclusively on Rosenberg v. Fleuti, 374 U.S. 449, 462 (1963), in which the United States Supreme Court ruled that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." This doctrine announced in Fleuti was initially created to benefit legal permanent residents ("LPRs") who left the country at some point briefly, then returned and were later determined to be inadmissible. See Camins v. Gonzales, 500 F.3d 872, 877 (9th Cir. 2007) (explaining Fleuti).  In Fleuti, the defendant had been an LPR since 1952 and went to Mexico for two hours in 1956.  374 U.S. at 450.  When he returned,

7

immigration officers determined that he was excludable based on his sexual orientation under the former Immigration and Nationality Act section 101(a)(12). Id. at 450-51. The Court reversed the defendant's exclusion, concluding that his "innocent, casual and brief excursion" for "about a couple hours" did not satisfy the intent requirement for entry into the U.S. Id. at 462.[1]

Grafting the Fleuti "innocent, casual and brief" exception onto the ABC agreement is problematic for at least two reasons. First, the Fleuti Court was interpreting the Immigration and Nationality Act that required intent to establish entry into the United States. The provision read: "The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not **intended** . . ." Fleuti, 374 U.S. at 452. In contrast, the exception on which Plaintiff relies in the ABC agreement contains no such language on intent and is rather simple: "Class members apprehended at time of entry after the date of

---

[1] Long after Fleuti was decided, Congress passed the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (the "IIRIRA"), 8 U.S.C. § 1101(a)(13), which abrogated the Fleuti doctrine in favor of six specific exceptions to "entry" under the old Immigration and Nationality Act. See Camins, 500 F.3d at 877-80. The Ninth Circuit decided in Camins, however, that the statute cannot be applied retroactively. See id. at 880-85. Here, Plaintiff's alleged "entry" occurred in 1994 – before the IIRIRA was enacted – so the IIRIRA does not automatically foreclose Plaintiff's reliance on Fleuti.

1 preliminary approval of this agreement shall not be eligible for the
2 benefits hereunder." ABC, 760 F. Supp. at 800 (Paragraph 2 of ABC
3 agreement).

4     Second, there is no suggestion that the parties ever considered
5 such an interpretation of the ABC agreement when it was drafted or
6 that it could be reasonably interpreted to include support such an
7 interpretation. A settlement agreement "is a contract and its
8 enforceability is governed by familiar principles of contract law."
9 Chaly-Garcia v. United States, 508 F.3d 1201, 1203 (9th Cir. 2007)
10 (interpreting the ABC agreement) (citation omitted). The parties'
11 intent must be ascertained by the terms of the settlement agreement
12 itself. Id. (citation omitted). The Court must presume that such an
13 important provision as the Fleuti doctrine would have been included in
14 the ABC agreement had the parties intended Plaintiff to benefit from
15 it. In fact, the language used in the "entry" clause counsels against
16 such interpretation. By its terms, the clause refers directly to
17 "class members" who are apprehended at the time of entry, which this
18 Court previously interpreted to mean that class members, even if they
19 meet the membership requirements, may be ineligible for benefits if
20 they leave the United States and then are apprehended upon reentry.
21 As a result, the ABC agreement itself contemplates that class members
22 may leave the country – even briefly – and become ineligible at the
23 time of reentry into the United States. Consistent with the asylum
24 office, the Court concludes that Plaintiff cannot avail himself of the
25 Fleuti exception to receive benefits under the ABC agreement.

26     Further, even if Plaintiff could avail himself of the Fleuti
27 exception under the ABC agreement, his claim that his trip in 1994 was
28 "innocent, casual and brief" is fatally flawed. The Fleuti Court

identified three criteria to determine whether an LPR's entry into the United States was not intended: (1) "the length of time the alien is absent"; (2) "the purpose of the visit"; and (3) "whether the alien has to procure any travel documents in order to make his trip". Fleuti, 374 U.S. at 462.  Although Plaintiff's trip was arguably brief (three weeks) and he had the legitimate purpose to visit his ill mother, he understood that he was required to secure travel documents to travel abroad.  In fact, he applied for that documentation and was denied.  Despite the denial, he left the country.  This demonstrates that Plaintiff knew his trip was an excursion that would require him to "enter" the United States, as the term is defined in the ABC agreement, and that he would, in fact, risk losing his ABC eligibility by taking his trip.  Therefore, Plaintiff does not fall within the Fleuti exception even if it applied to him.

**IV.   CONCLUSION**

As the asylum office concluded, the doctrine announced in Fleuti does not apply to the entry provision in paragraph 2 of the ABC agreement.  Further, even if it did, Plaintiff effected an entry when he returned to the United States in 1994, and is therefore ineligible for ABC benefits.  The asylum office properly denied his application.  Defendants' motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.  **Defendants are ORDERED within ten (10) days of the date of this Order to file a proposed judgment consistent with the Court's opinion.**

DATED: August 15, 2008

_____
**AUDREY B. COLLINS
UNITED STATES DISTRICT JUDGE**